UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED STATES OF AMERICA

v.

CRIMINAL NO. 4:22-cr-560

CARLOS MARTINEZ,
a/k/a "Cuate"

## PLEA AGREEMENT

The United States of America, the defendant Carlos Martinez ("Defendant"), and Defendant's counsel, pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1. Defendant agrees to plead guilty to Counts 1, 2, 3, 4, and 5 of the Superseding Indictment. Count 1 charges Defendant with Conspiracy to Fix Prices and Allocate the Market in violation of 15 U.S.C. § 1. Count 2 charges Defendant with Conspiracy to Monopolize in violation of 15 U.S.C. § 2. Count 3 charges Defendant with Hobbs Act Extortion Conspiracy in violation of 18 U.S.C. § 1951(a). Count 4 charges Defendant with Hobbs Act Extortion in violation of 18 U.S.C. § 1951(a). Count 5 charges Defendant with Money Laundering Conspiracy in violation of 18 U.S.C. § 1956(h). Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the indictment, or proved to a jury or proven beyond a reasonable doubt.

### Punishment

2. The **statutory** maximum penalty for each violation of 15 U.S.C. § 1 is a term of imprisonment of not more than 10 years and a fine of not more than $1,000,000. The **statutory** maximum penalty for each violation of 15 U.S.C. § 2 is a term of imprisonment of not more than

10 years and a fine of not more than $1,000,000. The **statutory** maximum penalty for each violation of 18 U.S.C. § 1951(a) is a term of imprisonment of not more than 20 years and a fine of not more than $250,000 or the greater of twice the gross gain or twice the gross loss. The **statutory** maximum penalty for each violation of 18 U.S.C. § 1956(h) is a term of imprisonment of not more than 20 years and a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater. Additionally, Defendant may receive a term of supervised release after imprisonment of not more than 3 years. 18 U.S.C. §§ 3559(a)(3) and 3583(b)(2). Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for not more than 2 years, without credit for time already served on the term of supervised release prior to such violation. 18 U.S.C. §§ 3559(a), 3583(e)(3). Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole. Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the parties agree that a sentence of 11 years' imprisonment is the appropriate disposition of the case.

### Mandatory Special Assessment

3. Pursuant to 18 U.S.C. § 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

## Immigration Consequences

4. Defendant recognizes that pleading guilty may have consequences with respect to his immigration status. Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant understands that if he is a naturalized United States citizen, pleading guilty may result in immigration consequences, such as denaturalization and potential deportation or removal from the United States. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty, and Defendant affirms that he wants to plead guilty regardless of any immigration consequences that may result from the guilty plea and conviction.

## Waiver of Appeal and Collateral Review

5. Defendant is aware that 28 U.S.C. § 1291 and 18 U.S.C. § 3742 afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that 28 U.S.C. § 2255 affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence. Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under 28 U.S.C. § 2255. In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

6. Defendant also agrees that should the conviction following the Defendant's plea of guilty pursuant to this Agreement be vacated for any reason, any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement (including any counts that the United States has agreed to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against the Defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution. It is the intent of the parties that the Defendant waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

7. In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that with the exception of the agreed-upon sentence of 11 years' imprisonment, any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United States, or the Probation Office, is a prediction and not a promise, did not induce his guilty plea, and is not binding on the United States, the Probation Office, or the Court. The United States does not make any promise or representation (except for the agreed-upon sentence of 11 years' imprisonment) concerning what sentence the Defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005).

8. Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

4

### The United States' Agreements

9. The United States agrees to each of the following:

   (a) If the Court determines that Defendant qualifies for an adjustment under U.S.S.G. § 3E1.1(a), and the offense level prior to operation of § 3E1.1(a) is 16 or greater, the United States will move under § 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of his intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently; and

   (b) The United States will seek a custodial sentence of 11 years' imprisonment.

### Agreement Binding – United States Attorney's Office for the Southern District of Texas, Antitrust Division of the Department of Justice, and Violent Crime and Racketeering Section of the Department of Justice Criminal Division Only

10. The United States Attorney's Office for the Southern District of Texas, the Antitrust Division of the Department of Justice, and the Violent Crime and Racketeering Section of the Department of Justice Criminal Division agree that they will not further criminally prosecute Defendant in the Southern District of Texas for the specific conduct described in the Superseding Indictment. This plea agreement binds only the United States Attorney's Office for the Southern District of Texas, the Antitrust Division of the Department of Justice, the Violent Crime and Racketeering Section of the Department of Justice Criminal Division, and Defendant. It does not bind any other United States Attorney's Office or Division of the United States Department of Justice. The United States Attorney's Office for the Southern District of Texas, the Antitrust Division of the Department of Justice, the Violent Crime and Racketeering Section of the Department of Justice Criminal Division will bring this plea agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices, if requested.

### United States' Non-Waiver of Appeal

11. The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

    (a) to bring the facts of this case, including evidence in the files of the United States Attorney's Office for the Southern District of Texas, the Antitrust Division of the Department of Justice, the Violent Crime and Racketeering Section of the Department of Justice Criminal Division, or the files of any investigative agency, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

    (b) to set forth or dispute sentencing factors or facts material to sentencing;

    (c) to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

    (d) to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and 18 U.S.C. § 3553(a); and

    (e) to appeal the sentence imposed or the manner in which it was determined.

### Sentence Determination

12. Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, Section 3553(a). Defendant is aware that the court will impose a sentence in this case after the court's consideration of the Sentencing Guidelines, which are only advisory; and the parties' agreement to a sentence of 11 years' imprisonment under Federal Rule of Criminal Procedure 11(c)(1)(C). Defendant acknowledges and agrees that if the court accepts this plea agreement, then the court will sentence defendant to 11 years'

imprisonment. Moreover, if the court accepts the plea agreement and sentences Defendant to 11 years' imprisonment, Defendant will remain bound to fulfill all of the obligations under this plea agreement and cannot withdraw his guilty plea. However, if the court rejects this plea agreement, Defendant will have the opportunity to withdraw his plea of guilty pursuant to Federal Rule of Criminal Procedure 11(d)(2)(A).

## Rights at Trial

13. Defendant understands that by entering into this Agreement, he surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

(a) If Defendant persisted in a plea of not guilty to the charges, Defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

(b) At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his/her attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court; and

(c) At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he could testify on his own behalf.

7

**Factual Basis for Guilty Plea**

14. Defendant is pleading guilty because he is in fact guilty of the charges contained in Counts 1, 2, 3, 4 and 5 of the Superseding Indictment. If this case were to proceed to trial, the United States could prove each element of the offenses beyond a reasonable doubt. The following facts, among others, would be offered to establish Defendant's guilt:

**Background**

Defendant, also known as "Cuate," conspired with co-conspirators to fix prices and allocate the market for transmigrante forwarding agency services in and around the Los Indios, Texas Port of Entry and the Brownsville-Harlingen, Texas metropolitan area that includes, among other places, Cameron and Hidalgo Counties and the cities and towns of San Benito and Los Indios ("the relevant market"). Defendant also combined and conspired with co-conspirators to monopolize transmigrante agency services in the relevant market. The purpose of the conspiracy to monopolize was for Defendant and his co-conspirators to acquire and maintain monopoly power—that is the power to control prices or exclude actual or potential competition—in the relevant market. Defendant had the specific intent to help acquire or maintain monopoly power in the relevant market.

Defendant also conspired with co-conspirators to interfere with commerce by extortion as "extortion" is defined in 18 U.S.C. § 1951(b)(2), and did in fact interfere with commerce by extortion. Specifically, Defendant conspired to force non-conspiring transmigrante agencies to pay money to the Pool, a group of transmigrante forwarding agencies who conspired to limit competition from other agencies and increase prices for their services in the relevant market, and pay other extortion fees. Each of these conspiracies—to fix prices and allocate the market, to monopolize the market, and to interfere with commerce by extortion—induced in operators of the

8

smaller transmigrante agencies fear, including fear of economic loss or damage, as well as fear of physical harm. The evidence at trial would be sufficient to establish that Defendant's co-conspirators perpetrated acts of intimidation, coercion, and violence within the scope and in furtherance of the jointly undertaken criminal conspiracies to fix prices and allocate the market, monopolize commerce, and affect commerce by extortion, which by his participation in these conspiracies, were reasonably foreseeable to Defendant.

Finally, Defendant conspired with co-conspirators to launder U.S. currency, namely, extortion proceeds, by (i) transporting U.S. currency through and between the Southern District of Texas and Mexico with the intent to promote extortion, and doing so with the knowledge that the U.S. currency being transported constituted extortion proceeds, as well as that the transport of that U.S. currency was designed in whole or in part to conceal or disguise the nature, location, source, ownership, and control of the extortion proceeds; and by (ii) conducting financial transactions involving extortion proceeds while knowing that the property involved in the financial transactions constituted extortion proceeds and knowing that such transactions were designed in whole or in part to conceal or disguise the nature, location, source, ownership, and control of the extortion proceeds, or to avoid a transaction reporting requirement under State or Federal law, and with the intent to promote extortion.

Transmigrantes are Central American immigrants who transported goods, often used vehicles, from the United States, through Mexico, for re sale in their home countries. The used cars often originated in U.S. states outside of Texas, were transported from the Southern District of Texas across the U.S.-Mexican border to Mexico. Moreover, in order to do business, transmigrantes had to obtain customs permits and paperwork; only "patentes" that were licensed, registered, bonded, and authorized by the Mexican government could process this paperwork.

Transmigrante forwarding agencies (also referred to as "forwarding agencies") operating in the relevant market provided services to transmigrantes, including assistance in completing the required customs paperwork and working with a patente to obtain the necessary documents.

The market for transmigrante forwarding agency services in and around the Los Indios, Texas area composed a substantial and appreciable part of commerce among the several states. The volume of commerce attributable to Defendant from 2015 through 2022 related to the conspiracies to fix prices, allocate the market, and monopolize was more than $10,000,000 but less than $50,000,000. The loss attributable to the extortion conspiracy was more than $9,500,000.

### Antitrust and Extortion Conduct

Defendant and other co-conspirators participated in an unlawful Pool. The Pool began in 2011 when several transmigrate forwarding agencies joined together for the purpose of limiting competition from other transmigrante forwarding agencies and increasing prices for their services in the relevant market. Defendant began operating in the transmigrante industry in or around 2014 with Defendants Rigoberto Brown and Roberto Garcia Villarreal. In or around March of 2017, Defendant and Co-Conspirator A initiated Ceiba to operate as a forwarding agency in the relevant market. After opening Ceiba, Defendant and Co-Conspirator A joined and took control of the Pool.

Co-Conspirator A served as Defendant's representative to the Pool. Members of the Pool agreed to fix the prices that forwarding agencies charged transmigrantes, agreed that non-Pool members had to pay into the Pool in order to do business in the relevant market, and agreed to allocate the market for transmigrante customers by agreeing on revenue percentages for each Pool member.

Defendant and other co-conspirators held exclusive relationships with Mexican patentes.

10

Defendant paid the Mexican patentes in order for Defendant to have exclusive relationships with them. Because there was a limited number of Mexican patentes who worked in the transmigrante industry, the exclusive relationships between Defendant and the patentes meant that other market participants were excluded from competing in the industry.

As part of the conspiracy, market participants who did not have exclusive relationships with patentes were forced to participate in the industry through the co-conspirators. For example, any other market participant who was not part of the conspiracy had to join and pay into the "Pool." In order to join the Pool, agencies had to agree to fix prices and agree to profit-sharing percentages that were set by Defendant and the co-conspirators. Defendant and other co-conspirators kept a larger share of the revenue from the Pool. The forwarding agencies who did not have exclusive relationships with the patentes were allotted a smaller share of revenue from the Pool.

During the charged conspiracy in Count Three, Defendant conspired to receive money and business from other transmigrante forwarding agencies with their consent induced by the wrongful use of fear. Non-conspiring forwarding agencies operated in fear that if they did not join the Pool or pay other required extortion fees, they would suffer economic loss or damage or physical harm. As a result, these agencies reluctantly participated in the Pool and paid other fees to Defendant and co-conspirators out of fear. Defendant acknowledges that the Defendant's conduct affected commerce since the money and transmigrante goods traveled in interstate commerce.

Defendant communicated with Co-Conspirator A regarding the transmigrante industry generally, the price-fixing and market allocation agreement, and the Pool. Defendant and Co-Conspirator A earned money from the Pool by sharing Ceiba's Pool percentage: two-thirds paid to Defendant and one third paid to Co-Conspirator A. Co-Conspirator A enforced the rules of the Pool on Defendant's behalf by monitoring whether forwarding agencies were charging the agreed-upon

11

prices and were paying into the Pool as required. Among the individuals who collected extortion payments on Defendant's behalf were co-defendants Pedro Calvillo Hernandez, Juan Hector Ramirez-Avila, and Roberto Cesar Garcia Villareal.

As to Count 4 of the indictment, Defendant along with other co-conspirators obtained money from a transmigrante agency owner, L.G in or around December 2019. At that time, L.G. was not part of the Pool. Defendants Carlos Yzaguirre and Diego Ceballos-Soto, with the knowledge and agreement of Defendant, met with L.G. to collect $47,000 as partial payment of a "fine" for operating in the transmigrante industry outside the Pool and without paying required extortion fees. Defendants Carlos Yzaguirre and Diego Ceballos Soto, with the knowledge and agreement of Defendant, later met with L.G. again to collect the outstanding $42,000 owed. L.G. made the payments out of fear of economic loss or damage as well as fear of physical harm. The collection of these payments from L.G. affected commerce between Texas and points outside of Texas.

### Money Laundering

Defendant received extortion proceeds, namely money, from the Pool. Defendant used money received from the conspiracy alleged in Count 3 to conduct other financial transactions, which were designed to conceal and disguise the nature, source, ownership, and control of the proceeds. Defendant purchased the building and property located at FM 2520, San Benito, Texas (Property ID 192566- 9.95 acre tract) with extortion proceeds. ~~The residence was purchased in Co-defendant Tapia's name, but Tapia did not live in the residence. The residence was purchased in Tapia's name in order to conceal and disguise the nature, source, ownership, and control of extortion proceeds.~~ KS (M)

Additionally, Co-defendant Ramirez and others made cash deposits of money obtained from the conspiracy alleged in Count 3 into bank accounts controlled by Defendant and his family. The property involved in these deposits represented the proceeds of specified unlawful activity, that is, extortion, and the deposits were made knowing that the transactions were designed to conceal and disguise the nature, source, ownership, and control of the proceeds, and to avoid a transaction reporting requirement under State or Federal law. All of the property and currency listed in paragraph 44 of the Superseding Indictment was either involved in the money laundering conspiracy, proceeds, or derived from proceeds traceable to extortion.

This proffer of evidence is not intended to constitute a complete statement of all facts known by the government. Rather, it is a limited statement of facts intended to prove the minimal necessary factual predicate for Defendant's guilty plea. The government reserves its right to present additional evidence about information material to sentencing and the payment of restitution.

## Breach of Plea Agreement

15. If the Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, including required financial information, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against Defendant in any prosecution.

### Monetary Penalties, Assets and Financial Disclosures

16. Defendant understands and agrees that monetary penalties will be subject to immediate enforcement as provided in 18 U.S.C. § 3613 and that monetary penalties will be submitted to the Treasury Offset Program so that payments to Defendant may be applied to federal debts.

17. Defendant understands that restitution, forfeiture, and fines are separate components of sentencing and are separate obligations. The parties will jointly recommend that the Court impose a fine of $2,000,000, consisting of a $1,000,000 fine for each Count 1 and Count 2. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States, and to assist fully in the collection of restitution and fines. Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, any restitution order, any forfeiture orders, and any fines.

### Restitution

18. Defendant agrees to pay full restitution to the victim(s) regardless of the count(s) of conviction. Defendant understands and agrees that the Court will determine the amount of restitution to fully compensate the victim(s). Defendant agrees that restitution imposed by the Court will be due and payable immediately and that Defendant will not attempt to avoid or delay payment. Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, the restitution order imposed by the Court.

### Forfeiture

19. As part of this plea agreement, Defendant agrees to the following:

(a) to forfeit, via either an administrative or judicial proceeding, his interest in all assets

listed in the charging document (including any Supplemental Notice of Forfeiture), and to forfeit or abandon any assets seized during this investigation or a related investigation;

(b) to withdraw any claims and petitions for such listed or seized assets, whether in this proceeding or another proceeding, and to waive notice of administrative proceedings (including forfeiture, destruction, and abandonment for seized property);

(c) that Defendant obtained at least $9,500,000 from the criminal offense, that the factual basis for the guilty plea supports the imposition of a money judgment in that amount, and that the Defendant agrees to the imposition of a money judgment in that amount;

(d) that one or more of the conditions set forth in 21 U.S.C. § 853(p) exists, so that the forfeiture money judgment may be immediately satisfied via forfeiture of substitute property; and

(e) to the order of forfeiture becoming final as to Defendant immediately following this guilty plea or immediately following entry of the forfeiture order, whichever applies.

### Financial Statement

20. Defendant agrees to truthfully complete under penalty of perjury, within thirty days of the execution of this Plea Agreement, a financial statement on a form provided by the United States Attorney's Office and to update the statement within seven days of any material change. Defendant also agrees to make full disclosure to the United States Probation Office of all current and anticipated assets in which Defendant has an interest both before sentencing and again before termination of supervised release or probation, with such disclosures to be shared with the United States Attorney's Office.

21. Defendant further agrees not to dispose of or transfer any assets without the prior written permission of the United States and to authorize the release of all financial information requested by the United States, including, but not limited to, credit histories and tax returns. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's

financial disclosure, including in a deposition or informal debtor exam, whether before or after sentencing.

### Complete Agreement

22. This written plea agreement, including the attached addendum, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel. Other than any written proffer agreement(s) that may have been entered into between the United States and Defendant and signed by all parties, this Agreement supersedes any prior understandings, promises, agreements, or conditions between the United States and Defendant. No additional understandings, promises, agreements, or conditions have been entered into other than those set forth in this Agreement, and none will be entered into unless in writing and signed by all parties. No promises or representations have been made by the United States except as set forth in writing in this plea agreement. Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

23. Any modification of this plea agreement must be in writing and signed by all parties.

Filed in Houston, Texas, on __February 6__, 2025.

_____
Carlos Martinez
Defendant

Subscribed and sworn to before me on __February 6__, 2025.

Nathan Ochsner
United States District Clerk

_____
Deputy United States District Clerk

APPROVED:

16

~~JENNIFER LOWERY~~ Nicholas J. Ganjei
Acting United States Attorney

_____
Alexander L. Alum
Assistant U.S. Attorney

_____
Kent Schaffer
Attorney for Defendant

BRITTANY MCCLURE
MICHAEL G. LEPAGE
ANNE VELDHUIS
Trial Attorneys
Antitrust Division
U.S. Department of Justice

CHRISTINA TAYLOR
Trial Attorney
Violent Crime and Racketeering Section
U.S. Department of Justice

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED STATES OF AMERICA

v.

CRIMINAL NO. 4:22-cr-560

CARLOS MARTINEZ
a/k/a "Cuate"

PLEA AGREEMENT ADDENDUM

I have fully explained to Defendant his rights with respect to the pending indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory, and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. I have also explained to Defendant that sentences on multiple counts may be imposed to run consecutively to one another or to any other sentence. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____          2-6-2025
Attorney for Defendant                    Date

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CRIMINAL NO. 4:22-cr-560 |
| CARLOS MARTINEZ<br>a/k/a "Cuate" | |

PLEA AGREEMENT ADDENDUM

I have fully explained to Defendant his rights with respect to the pending indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory, and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. I have also explained to Defendant that sentences on multiple counts may be imposed to run consecutively to one another or to any other sentence. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____    _2-6-25_____
Attorney for Defendant                           Date

I have consulted with my attorney and fully understand all my rights with respect to the indictment pending against me. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

_Carlos Martinez_  
Defendant

_1/31/25_  
Date